ERMA MAE STERNS, APPELLEE, V. ADOLPH HELLERICH,. APPELLANT.

FILED JANUARY 24, 1936.   No. 29491.

*Baylor & Tou Velle, George Healey* and *C. V. Dunnuck,* for appellant.

*Chambers & Holland* and *Clyde Worrall, contra.*

Heard before GOOD, EBERLY and PAINE, JJ., and RAPER and PROUDFIT,.District Judges.

GOOD, J.

Plaintiff recovered a judgment for personal injuries sus-

tained while riding as a guest in defendant's automobile. Defendant has appealed.

About 8:30 o'clock p. m., November 24, 1933, defendant's son Adolph was using defendant's car to transport himself and four other young people to a "wiener roast." Plaintiff and another girl were in the front seat, Adolph on the left at the wheel, plaintiff next to him, and the other girl on the right-hand side. Two boys, or young men, were in the rear seat. The car ran off the left-hand side of a bridge, and Adolph and one of the boys in the rear of the car were killed. Plaintiff sustained crushed vertebræ and practically severance of the spinal cord at about the twelfth dorsal vertebra. She is paralyzed from her waist down and is a helpless invalid as long as she may live.

The road over which the young people were traveling was a dirt road that was dragged about once in every ten days or two weeks. Adolph had previously been over the road at least twice. Plaintiff had never been over the road before. The car was traveling west. East of the bridge where the accident occurred is a long, rather steep hill, extending from the bridge eastward 430 feet. The road down this hill curves first to the south and then back to the section line before reaching the bridge. Thus far the facts are not in dispute.

The evidence on behalf of plaintiff is that a very short distance before the crest of the hill was reached one of the boys in the rear seat of the car warned Adolph, the driver, that there was a bad place ahead in the road, and that Adolph responded that "we were in a hurry;" "that there were kids waiting." Plaintiff's evidence is that Adolph was driving the car at the rate of 50 miles an hour; that, notwithstanding the warning, he did not slacken the speed of the car going down the hill on the curving road, and that the car was weaving somewhat from side to side before it reached the bridge; that it plunged through the left-hand side of the bridge, with the result above indicated. The bridge was 16 feet wide and 55 feet long. The evidence shows that the car left the bridge 11 feet from the east end

and shot through the air for a distance of about 47 feet, striking the opposite or west bank of the creek.

The evidence on behalf of defendant tends to show that no warning was given to Adolph of the bad place in the road, and that his speed was not more than 20 to 25 miles an hour as he descended the hill. However, the rate of speed and whether the warning was given were questions of fact for the jury. Since the jury found for plaintiff, we must assume that they believed the testimony on behalf of plaintiff, which they had a right to do, and the jury's finding upon these facts, if properly submitted for their consideration, is binding upon this court.

In this court defendant, for reversal, has assigned numerous alleged errors. The first four relate to the sufficiency of the evidence to sustain any recovery by plaintiff. It is argued that defendant, while the owner of the car, was not the driver, and that it would be an extension of the family-purpose doctrine to permit a recovery in this case. It is admitted that the family-purpose doctrine has been declared applicable to cases where the driver of the car was guilty of simple negligence, but it is claimed that it has not been held to constitute the basis for liability on the part of the owner for the gross negligence of the driver. In this case it is stipulated that the car was owned by defendant, and that the use of the car on the evening in question was with the consent and permission of defendant.

Defendant cites and relies upon *Hogg v. MacDonald*, 128 Neb. 6, 257 N. W. 274, and *Elbers v. Whitmore*, 122 Neb. 653, 241 N. W. 126. In the first of the cited cases the driver of the car was not a member of defendant's family and was not using the car by defendant's direction or for her benefit. In the second case cited an employee of defendant was given permission to use defendant's truck for a specific purpose, but abandoned that purpose and used the car for an entirely different one, and for which he had no permission. Clearly, these cases have no application to the question under consideration. It is difficult to perceive on what theory the owner of a car, used for family purposes, would

be liable for simple negligence of the driver when used by a member of the family, and would not be liable for injury caused by the gross negligence of a member of the family while driving the car. We think that the contention is without merit.

Defendant further contends that he should not be liable, because his son Adolph was confronted with a sudden emergency and was not liable for failing to make a proper choice of courses to pursue. In the instant case, we perceive from the record no sudden emergency with which the driver of the car was confronted. He knew the road; he knew the conditions; he had been warned and disregarded his knowledge of the road and disregarded the warning. No sudden emergency, such as appeared in the cases on which defendant relies, is present in the instant case.

It is further argued that the evidence will not warrant a finding that Adolph was guilty of gross negligence. Gross negligence, within the meaning of the automobile guest law, has been defined by this court in this language: "In the law providing that an unintoxicated motorist shall not be liable in damages to a guest except for 'gross negligence,' that term indicates a degree of negligence greater than want of ordinary care or slight negligence but not necessarily extending to wanton or wilful or intentional disregard for the guest's safety." *Gilbert v. Bryant,* 125 Neb. 731, 251 N. W. 823. Also, in *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96, this court held that gross negligence, within the meaning of the statute, "means negligence in a very high degree, or the absence of even slight care in the performance of a duty." Also, "The existence of gross negligence must be determined from the facts and circumstances in each case."

Adolph was driving the car at night on a curving road down a steep hill and approaching a narrow bridge, of which he was aware, at a speed of 50 miles an hour, when he had been warned that there was a dangerous place in the road ahead. He chose to disregard the warning and continued the reckless driving, with the disastrous results

indicated. We think that, under the circumstances, the question of gross negligence was one for determination by the jury.

Defendant complains because of the failure of the court to submit to the jury the question of contributory negligence on the part of plaintiff. The evidence shows that plaintiff was unfamiliar with the road; had no knowledge of the narrow bridge ahead; had no knowledge of the imminent danger, at least until they were in close proximity to the bridge, and then less than one second elapsed before the accident occurred. In that time there was no opportunity for plaintiff to warn the driver of the car. Moreover, the driver had been warned a few seconds before, and he, and not she, knew of the danger ahead. We fail to find any evidence that would justify a finding that plaintiff was guilty of contributory negligence. The court did not err in refusing to submit the question to the jury where there was no evidence of negligence on the part of plaintiff.

Defendant complains that the court did not instruct the jury on the subject of a sudden emergency, and failed to give a number of instructions relating to that subject. As heretofore determined, there was no sudden emergency that confronted the driver, and there was no need for such an instruction.

It is also contended that the court erred in not submitting to the jury the issue of assumption of risk; in not instructing the jury in relation thereto, and in failing to give one or more of defendant's instructions relative to that subject. We find no warrant in the record that would justify a finding that plaintiff had assumed any risk from the gross negligence of the driver of the car. She had ridden with him on a number of occasions and in some instances where he may have driven as fast as 50 miles an hour, but whether it was in daylight and on a clear highway is not disclosed. There is no evidence that plaintiff had any knowledge that he was a reckless driver or would be guilty of gross negligence. The rule laid down in *Kelly v. Gagnon*, 121 Neb. 113, 236 N. W. 160, is inapplicable to the facts disclosed by the present record.

Defendant complains because the court permitted plaintiff to testify as to the rate of speed and that, in her opinion, the car was being driven at 50 miles an hour as it descended the hill and approached the bridge where the fatal accident occurred. The evidence discloses that plaintiff had ridden in cars many times; that she had driven her father's car, had watched the speedometer and observed the speed and was able to state the approximate speed at which an automobile was traveling. Sufficient foundation, in our opinion, was laid to permit her to give her opinion as to the speed of the car. *Miller v. Central Taxi Co.*, 110 Neb. 306, 193 N. W. 919.

Defendant assigns as error that the verdict is excessive. The recovery was for $7,500. The plaintiff was a girl 16 years of age, bright and intelligent, a junior in high school and at the head of her class, with bright prospects for a happy life. Now she is a helpless invalid for the remainder of her life. The verdict certainly cannot be said to be excessive.

The learned trial judge seems to have conducted this case with great care and to have protected the defendant in all of the rights to which he was entitled. The record discloses no error prejudicial to defendant.

AFFIRMED.